UNITED STATES *v.* RENKEN & YATES SMITH CORP. (No. 3978)[1]

United States Court of Customs and Patent Appeals, November 30, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[1] T. D. 48687.

[Oral argument October 16, 1936, by Mr. Jackson and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge. delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division.

The merchandise in question, described in the record as "special assorted creams," imported, some under the Tariff Act of 1922, and some under the Tariff Act of 1930, was held dutiable as nonenumerated manufactured articles at 20 per centum ad valorem under paragraphs 1459 and 1558, respectively, of those acts, as claimed by the importer, rather than as biscuits, wafers, and similar baked articles at 30 per centum ad valorem under paragraphs 733, respectively, of those acts.

The corresponding paragraphs of the two acts are identical. Accordingly, we quote only paragraphs 733 and 1558 of the Tariff Act of 1930. They read:

PAR. 733. Biscuits, wafers, cake, cakes, and similar baked articles, and puddings, all the foregoing by whatever name known, whether or not containing chocolate, nuts, fruits, or confectionery of any kind, 30 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

On the trial below, the Government submitted no evidence.

The importer submitted the testimony of but one witness, Edwin Grant Gobell. He said that he was vice president of the Renken & Yates Smith Corp., of New York City, the importer, and that he had held that position for a period of six years. He identified Exhibit 1, which consists of a tin box containing "assorted creams," as representative of the involved merchandise, and stated that, although the words "Peek Frean's assorted cream biscuits" appearing on the end of the box correctly describe the merchandise, it was, nevertheless, invoiced, purchased, and sold as "special assorted creams." We quote from the testimony of the witness as to the process of manufacture of the involved articles:

—A. The dough is made and rolled out to the required thickness, stamped out by machinery into the required shapes. From there it travels through an oven.

Q. I understand you to say the dough is rolled to the required thickness, and then it is put on a——A. Put on the pan, and into a traveling oven.

Q. Put on the pan into a traveling oven, and is there baked?—A. Yes.

Q. And what is baked?—A. Baked biscuits come out.

Q. Baked biscuits come out of the sizes and shapes of these samples in Exhibit 1.—A. Yes, sir.

Q. Then what is done?—A. A reasonable period is allowed for it to cool off, and then they go to a table where a quantity of cream is made, and the cream is put on one side of one of the baked biscuits, and another pressed down on it, into a sandwich.

Q. Is the process complete then?—A. The process is complete then.

Q. Then I understand the biscuit is made of flour, made of a regular dough?—A. Yes, sir.

Q. What is the cream made of?—A. Basically from vegetable fats with various essences.

Q. Are there anything besides vegetable fats and essences?—A. *Not to my knowledge.*

Q. In vegetable fats, would that be a vegetable oil?—A. Vegetable fat made by an oil or powder to form the cream.

Q. What kind of flavor is put into this cream?—A. One of the biscuits is called "orange-lemon", that will have orange; another biscuit "vanilla", "raspberry", and so on.

Q. The flavor is in the cream itself?—A. The flavor is added to the cream; yes, sir.

Q. The flavor is an essence?—A. Flavor essence; yes, sir.

Q. Are the articles baked after the cream is put in?—A. No, sir. [Italics ours.]

The witness further stated that he would call the articles "cream sandwiches," although, generally speaking, they were "biscuits"; that they were purchased by his company—the appellee—as "assorted creams"; and that he called them sandwiches because they were in the form of a sandwich. When asked by a member of the trial court whether any sugar was added to the "cream," the witness replied, "Not to my knowledge."

On this record the trial court was of opinion that the issues in this case were controlled by the decision of this court in the case of *Renken & Yates Smith Corp.* v. *United States,* 22 C. C. P. A. (Customs) 225, T. D. 47143, wherein it was held that certain "cheddar sandwiches," composed of two biscuits, commonly called crackers, with a comparatively thick layer of cheese between them, were not dutiable as "biscuits" or "similar baked articles" under paragraph 733 of the Tariff Act of 1930, but rather as nonenumerated manufactured articles under paragraph 1558 of that act.

In our decision in that case we expressed the view that the articles there involved were something more than "biscuits" or "similar baked articles"; that they were not only composed of two biscuits, which were baked articles, but also a substantial portion of cheese, the finished article not having been baked in its entirety. We there called attention to the fact that the testimony showed that the "cheddar sandwiches" contained no "chocolate, nuts, fruits, or confectionery of any kind," and that they were bought and sold as "cheddar sandwiches." We further held that the "cheddar sandwiches" were not similar in material, quality, texture, or use to biscuits or similar baked articles, and, accordingly, were not dutiable under paragraph 733, *supra,* by similitude.

It will be observed that there is considerable difference between the facts there involved and the facts before us in the case at bar. There is nothing in the record before us, as there was in that case, to

establish that the involved articles contain no "chocolate, nuts, fruits, or confectionery of any kind." Accordingly, the court is left in the dark as to the precise character of the "cream," which, of course, is an important constituent of the involved articles.

The witness stated that the "cream," made basically from vegetable fats and containing various essences according to the flavor desired, was spread on one side of a biscuit, and another biscuit was pressed down upon it so as to give the finished article the appearance of a sandwich, and, although, as hereinbefore noted, in answer to the question of whether sugar was added to the "cream," he answered, "Not to my knowledge," he did not assert affirmatively that sugar or some other sweetening material was not added.

An examination of the contents of Exhibit 1 discloses that, in addition to the "cream" described by the witness, some of the so-called "assorted creams" are composed, in part of what appears to be sweetened fruit, and others contain what appears to be chocolate cream.

In the case of *United States* v. *Meadows & Co.*, 5 Ct. Cust. Appls. 532, T. D. 35177, this court had under consideration the dutiable status of an assortment of various fancy-shaped biscuits, some of which were "surfaced with icing." The merchandise was assessed for duty by the collector under paragraph 194 of the tariff act of October 3, 1913, which provided, among other things, for "biscuits * * *, and other baked articles * * * containing chocolate, nuts, fruits, or confectionery of any kind, and without regard to the component material of chief value, twenty-five per centum ad valorem." It was claimed by the importer to be free of duty under the provisions of paragraph 417 of that act, which provided for "Biscuits, bread, and wafers, not specially provided for in this section." Although it was there argued that the icing was not a confection, the court, after quoting the following definitions of the words "confectioner" and "confectionery," respectively, from The New English Dictionary:

2. One who makes confections, sweetmeats, candies, cakes, light pastry, etc. * * *

1. Things made or sold by a confectioner; a collective name for sweetmeats and confections.

said that the phrase "confectionery of any kind," contained in the statute there involved, was intended to be used in its broadest sense; that—

The evidence would indicate that the articles involved in this case are such as are usually made and sold by confectioners. This testimony was not offered, it is true, for the purpose of proving the trade term, but to establish the fact that such articles are handled and sold by confectioners. We do not think that within this definition it is necessary that this icing be made up into forms before it can be classed as confectionery * * *,

and, accordingly, held that the icing which covered either one or more surfaces of the biscuits there involved was "confectionery" within the meaning of the statute.

It was argued by counsel for the importer in that case that, because the icing was on the surface or surfaces only of the biscuits, it was not contained in them within the statutory meaning of the word "containing."

This court was of opinion, however, that the view presented by counsel for the importer, as to the meaning of the word "containing," was too narrow, and concluded that the language of the statute "containing * * * confectionery of any kind" was "broad enough to include any article of which confectionery of any kind constitutes a part." Although the opinion did not so state, it is obvious, we think, that the articles there involved were not baked subsequent to the spreading thereon, or the pressing therein, of the confection.

There is nothing to show in the case at bar, as hereinbefore noted, that the "cream" placed between the two biscuits is not confectionery.

We can see no real distinction between biscuits that have been surfaced on one or more sides with a confection, as in the case of *United States* v. *Meadows & Co., supra,* and those having "confectionery of any kind," or "chocolate, nuts, or fruits," placed on the surface of one biscuit and another biscuit pressed down upon it so that, so far as the arrangement of the materials is concerned, the finished article resembles a sandwich, as in the case at bar. Assuming that the "cream" contained in the articles in question is, in fact, confectionery, and there is no evidence in the record to contradict such an assumption, it may be said that the articles are, in fact, biscuits, containing confectionery.

In the *Renken & Yates Smith* case, *supra,* the merchandise was obviously sandwiches. It was bought and sold as "cheddar sandwiches." Furthermore, it contained cheese, a substance not mentioned in paragraph 733, *supra.*

We there held, on the record before us, that the articles were, in fact, manufactured articles—sandwiches—composed of baked articles and cheese. However, we had no intention of being understood as holding that the mere placing of icing—confection—on a biscuit, or on two biscuits placed together so as to resemble a sandwich, would remove such article from the provisions of paragraph 733, *supra.* A cake is a baked article, even though icing is placed on the surface, and a layer cake is no less a cake, merely because it contains confectionery on its various layers. The court, in effect, so held in the case of *United States* v. *Meadows & Co., supra,* and the language "and other baked articles, * * * containing * * * confectionery of any kind," contained in paragraph 194 of the tariff act of October 3, 1913, there under consideration, is identical with the language contained in paragraphs 733, *supra.*

We think it would reduce the matter to an absurdity to hold that the mere placing of a confection on the outside surface, or on the various layers, of a baked article would take that article out of the provisions of paragraphs 733, *supra*.

We must hold, therefore, on the record before us, that the importer failed to overcome the presumption of correctness attending the collector's classification, which involved every essential element necessary to the classification of the involved merchandise under paragraphs 733, *supra*.

For the reasons stated, the judgment is *reversed*.

LENROOT, Judge, concurs in conclusion.